The next case on the calendar is Kamatsu v. Credit Suisse. Good morning, Your Honors. My name is Tawaki Kamatsu. I'm the pro se appellant in this matter. The reason why we're here today is for six years I've been subjected to wage theft by defendants. There are timesheets that existed when I went to the U.S. Department of Labor's Wage and Hour Division on October 10th of 2012 that the Wage and Hour Division actually claimed never existed. So if I made a timely complaint to the U.S. Department of Labor's Wage and Hour Division three years after the U.S. Government Accountability Office conducted an undercover audit of it that confirmed that it was improperly recording complaints, was not conducting investigations, the complaints that I made to the U.S. Department of Labor on October 10th, they encompassed FLSA claims, SOX claims, and also RICO claims. Specifically, I told them that I had received emails from NTT claiming that my work at Credit Suisse in 2012 was subject to a 10-hour professional day arrangement. However, there's no such provision in the contract NTT issued to me in January of 2012. So that is essentially wire fraud. If they're making a statement by email in which they're fraudulently contending that my contract is subject to a 10-hour professional day when in fact it's not, when there's nothing in that contract, that's wire fraud. Also, Judge Sotomayor, when she was assigned to the Second Circuit with regards to equitable tolling, she, on June 15th, 2001, she stated, to show that extraordinary circumstances prevented him from filing his petition on time, petitioner must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing. So essentially, if I'm not paid what I'm owed, that's going to have collateral consequences. It's going to severely impact my ability to pay my rent. So between 2013 and 2015, 2016, I was engaged in substantial litigation with landlords due to hardships with paying my rent, due to employment matters. I had a 12-month contract with Credit Suisse to work in 2012. When I was fired, I had nine months left on that contract. When I was fired, I experienced a shortfall of earnings of 70%, meaning from the time I was fired, the next set of jobs I had. That was a 70% drop-off in earnings. So obviously, that's going to have a detrimental impact on my ability to pay my bills. Also, after this case was dismissed by Judge Schofield, I have related litigation at the state court, at the civil court. Judge Sokoloff, Lisa Sokoloff, she issued a decision on, let's see, November 28th, 2016, where she stated, the court does not have the power under the Civil Court Act to grant equitable relief, such as compelling defendant to pay the cost of arbitration. If that is what plaintiff seeks, he must pursue it in a court with equitable powers, such as this one and the lower district court. So if I was specifically directed by the state court that if I sought to have the arbitration clause modified such that it would actually be possible for me to engage in arbitration with NTT, Judge Schofield's reasoning to not allow supplemental jurisdiction to occur was because the state court had already made a determination I had to proceed with arbitration. Can you just tell me what the status is? Do you have any pending appeals in the state court? No, only because I don't have the finances to pursue them. I'm standing in front of you six years after this wage theft occurred. I have judgments against me because of the landlord litigation, so essentially it's not possible for me to pursue those remedies. Also, while I was with Judge Schofield, I tried to exercise a kick-out provision with regards to SOX, and she refused to let me do that. A clerk for the ALJ actually left me a voicemail saying, yeah, I could exercise a kick-out. So if I filed a complaint with OSHA after it was initially filed timely with WHD, the Wage and Hour Division, and they didn't issue the final decision by the, I think, 180-day period, because of that I tried exercising the kick-out. Judge Schofield refused to let me do so. Also, there are e-mails confirming that NTT initiated the process for having me fired, contrary to claims that Judge Schofield unfortunately accepted, in which the suggestion was that Credit Suisse had initiated that firing. So the problem is, in my contract it said that NTT was required to give me advance notice in the event a firing was to occur. That never happened. There are e-mails after e-mails confirming I was engaged in protected activity because I wasn't being paid on time, because Credit Suisse was controlling how I worked, the number of hours that I worked. So essentially I was a misclassified independent contractor of joint employers, NTT data, and Credit Suisse. Unfortunately, I've only been given five minutes to argue today, so I'm constrained because of that. We'll hear from your adversary now, and if we have any additional questions after we've heard from him, we may give you another minute or two. We've carefully read all of your papers. May it please the Court. Christopher Neff for NTT Data, the first appellee in this case. I just wanted to clarify one issue in response to your Honor's question. Mr. Komatsu stated that he has no appeals pending in the state court. That's not entirely true. He did file a notice of appeal of a state court decision granting us sanctions for the filing of a fourth frivolous motion for reconsideration or rehearing in the state court. That appeal is, as I say, noticed but has not been perfected. What about the anything pending in the trial court, or are those proceedings over? Those proceedings, aside from that unperfected appeal, are essentially complete. It's stayed, not dismissed, but it has stayed pending. So the trial court has determined the claim should be arbitrated, and the time for appealing from that decision has lapsed. That's right, Your Honor. That time ran in approximately 2013. Unless the Court has any further questions. Thank you. Mr. Komatsu, if you want to respond for two minutes to anything that's been said about state court proceedings. Sure. I'm sorry. Mr. Sternfeld, I went out of order. Not at all. Apologies, Your Honors. Unless the panel has any specific questions for Credit Suisse, we're happy to cede our time. You'll rely on your brief. Exactly right. Thank you. Sorry for that oversight. Yes, I do have an appeal pending. But like I stated, there was never any determination made whether it was possible for me to engage in arbitration with NTT in the first place. At the outset of the state court proceeding, their motion to compel arbitration was actually dismissed, denied I should say, by Judge Peter Moulton. I think that was on July 3rd of 2013. So only after it was first denied did Judge Schechter grant it without conducting an assessment as to whether it was actually financially possible for me to engage in arbitration. I filed an application for a fee waiver to the American Arbitration Association. That was denied. That was presented to Judge Sokoloff. So she then directed me to seek modification of that arbitration order with a court that had equitable relief. And with regards to the motion for sanctions, that was just me asking NTT's partners, can you please stop doing business with NTT, such as the city of New York government agencies, because it's coming out of my wallet to fund the same company that's been committing wage theft against me. So right now, I'm a legal guardian for my mom. I have had extraordinary circumstances. I was illegally evicted from my apartment in October of 2015. My mom had a stroke. I had to pursue legal guardianship. So essentially, I visit my mom every weekend to look after her needs. This isn't just a cut and dry case. Like I said, if the roles were reversed, if you weren't paid for the services that you're performing, if I worked at Credit Suisse for a total of three different periods, twice in Japan, I came back to New York, NTT said you can work for Credit Suisse again on the condition that we're going to give you the opportunity to do so as an independent contractor with full control over how you do your work, over the hours that you work, every aspect of it. Instead, they let that slide. Credit Suisse controlled every aspect of how I worked for it, and I let NTT know about that. They did nothing about it. I have e-mails from Pierre Newman, the assistant manager at Credit Suisse, telling me how to help a user at Credit Suisse with an Excel problem. So if I'm an independent contractor, that's not being independent. Mr. Kamatsu, thank you for coming in today. We appreciate press days when they come in and present arguments, as you have. We have your brief, and we have the issue before us, principal issue, as to whether this court has jurisdiction or whether this is properly in state court. We will consider your briefs, and thank you very much for your arguments, all three of you. That's the last case on the calendar today, so I'll ask the court to adjourn. Thank you, court. Court is adjourned.